DECISION
{¶ 1} Relator, Howard E. Stamm, filed this original action requesting a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying him permanent total disability ("PTD") compensation and to enter an order granting that compensation.
 {¶ 2} This court referred this matter to a magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court deny the requested writ. (Attached as Appendix A.) Relator filed an objection to the magistrate's decision. In that objection, relator asserts that the magistrate failed to address his argument that the commission's order violates the principles expressed in State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203.
 {¶ 3} Before the magistrate, as here, relator essentially argued that the commission abused its discretion in determining that relator was capable of being retrained for sedentary work. By failing to adequately explain the impact of relator's age and failing to rely on the vocational evidence, relator argues, the commission violated the requirement articulated in Noll that the commission must reasonably explain its rulings. According to relator: "From a Noll perspective, the Commission walks on thin ice when it departs from the evidence on hand and begins formulating evidence in its role as `expert,' [State ex rel.Jackson v. Indus. Comm. (1997), 79 Ohio St.3d 266,] and associated cases notwithstanding."
 {¶ 4} We find, however, no violation of Noll or any other legal principle relator raises. While the magistrate did not cite to Noll in the conclusions of law, we agree with the magistrate's careful analysis of the issues presented. As the magistrate stated, the commission is the expert on non-medical issues and may draw its own conclusions from the non-medical information presented. See State ex rel. Jackson v. Indus.Comm. (1997), 79 Ohio St.3d 266, 270-271; State ex rel. Ewartv. Indus. Comm. (1996), 76 Ohio St.3d 139, 141. Here, the commission adequately analyzed and explained its bases for concluding that relator, despite his age, was capable of retraining for sedentary work. Therefore, we overrule relator's objection.
 {¶ 5} Finding no error of law or other defect on the face of the magistrate's decision, this court adopts the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, the requested writ is denied.
Objection overruled, writ of mandamus denied.
Petree and McGrath, JJ., concur.
 APPENDIXA IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State ex rel. Howard E. Stamm, : :
Relator, : :
v. : No. 05AP-742 :
Harm and Ring Mechanical Inc. : (REGULAR CALENDAR) :
and Industrial Commission of Ohio, : :
: :
Respondents. : :
:
 MAGISTRATE'S DECISION Rendered on December 22, 2005 Casper Casper, and Douglas W. Casper, for relator.
Jim Petro, Attorney General, and Sue A. Zollinger, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 6} In this original action, relator, Howard E. Stamm, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him permanent total disability ("PTD") compensation, and to enter an order granting said compensation.
Findings of Fact:
 {¶ 7} 1. Relator has three industrial claims arising out of his employment as an industrial pipe fitter repairing heating and air conditioning units. In 1992, he developed "bilateral, lateral epicondylitis." This injury is assigned claim number OD223222. His April 14, 1999 injury is allowed for "sprain lumbar region[;] herniated lumbar disc at L5-S1," and is assigned claim number 99-377594. His June 8, 1999 injury is allowed for "cervical sprain; cervical spondylosis," and is assigned claim number 99-625129.
 {¶ 8} 2. On December 29, 2004, relator filed an application for PTD compensation.
 {¶ 9} 3. Under the education section of the application, relator indicated that the highest grade of school he had completed was the ninth grade. After he quit school, he received special training for plumbing and pipe fitting.
 {¶ 10} The application form poses three questions to the applicant: (1) "Can you read?" (2) "Can you write?" and (3) "Can you do basic math?" Given a choice of "yes," "no" and "not well," relator selected the "yes" response for all three queries.
 {¶ 11} 4. The application form also requests information regarding the applicants work history. Relator indicated that he was employed as a pipe fitter from 1968 to 1999 and he was employed as a plumber from 1964 to 1968.
 {¶ 12} The application form asks the applicant to provide information regarding the employment performed. Relator indicated that, as a pipe fitter, he repaired heating and air conditioning units. This type of work required him to use wrenches and pipe cutting machines, to remove and repair motors, and to read prints and drawings.
 {¶ 13} 5. At the commission's request, relator was examined by Ron M. Koppenhoefer, D.O., who opined:
Based on the allowed conditions of this claim, Mr. Stamm would be limited to sedentary work activities at this time. He should be able to move his neck freely but avoid repetitive motions of the cervical spine. Cervical extension or activities which require him to look overhead should be avoided. He should also avoid chronic positioning of the cervical spine.
 {¶ 14} 6. In support of his PTD application, relator submitted a report dated April 12, 2005, from William T. Cody, a vocational expert. The Cody report states:
Education
Mr. Stamm completed nine years of formal education. He has not completed a GED nor has he participated in any sort of formal vocational training. Mr. Stamm reports that he can read, write, and perform basic mathematical operations.
Work History
From 1968 until 1999, shortly after his most recent work injury, Mr. Stamm worked as a HVAC technician. In this position he was responsible for repairing heating and air conditioning units. He handled over one hundred pounds on an occasional basis. This semiskilled job was performed at the very heavy level of physical demand. The tool usage skills he utilized in this position transfer to medium level maintenance related jobs.
From 1964 until 1968, Mr. Stamm worked as a plumber's helper. In this position he was responsible for repairing pipes. He handled over one hundred pounds on an occasional basis. This semiskilled job was performed at the very heavy level of physical demand. The tool usage skills that he acquired through the performance of this position transfer to the same medium level maintenance related jobs referenced above.
* * *
Vocational Potential Analysis
* * *
Mr. Stamm has work experience in jobs performed at the very heavy level of physical demand and has acquired skills that transfer to medium level jobs. He has no experience in or skills that transfer to positions performed at the sedentary level of physical demand. Therefore, only unskilled sedentary jobs can be considered as appropriate for Mr. Stamm, according to the limitations provided by Dr. Koppenhoefer. Mr. Stamm's manual trade work history and his limited, ninth grade, education are evidence that he is not able to perform semiskilled work within his physical capacity, especially clerically based work.
Dr. Koppenhoefer additionally offers that Mr. Stamm "should beable to move his neck freely but avoid repetitive motions of thecervical spine" (emphasis added). Dr. Koppenhoefer warns that Mr. Stamm "should also avoid chronic positioning of the cervicalspine" (emphasis added).
These additional limitations preclude the unskilled sedentary work that could otherwise be considered appropriate for Mr. Stamm, as all unskilled sedentary work requires repetitive movement and/or chronic positioning of the cervical region.
 {¶ 15} 7. Relator also submitted a vocational report dated August 29, 2004, from Penny Carr. This report had previously been submitted to the commission in connection with a prior PTD application. The Carr report states:
The following vocational tests were administered to Mr. Stamm on 8/29/04. He understood the testing directions and invested maximum effort in each situation.
 WIDE RANGE ACHIEVEMENT TEST:
The Wide Range Achievement Test measures reading, spelling, and arithmetic skills. Scores are provided for each of these sub-test areas which can be used to compare the achievement level of one person to another in terms of grade level:
Mr. Stamm's performance on the WRAT indicates the following:
 Reading — 7th grade level. (word recognition only) Spelling — 5th grade level. Arithmetic — 6th grade level.
Mr. Stamm confirmed that he has never been good in academic subjects. He explained that he could have had supervisory jobs if he had better academic skills. His work did not require reading or math. The wiring and schematic diagrams for his work were explained to him by a supervisor. He would not be appropriate for jobs requiring any reading, written communication, record keeping or math usage. Marginal literacy is a major vocational barrier to employment in today's labor market.
PERDUE PEG BOARD This test measures a person's fine dexterity and gross motor skills with the right and left hand separately, as well as when used simultaneously. The Purdue Peg Board is a well-researched test which is frequently used in the selection of employees for industrial jobs.
Mr. Stamm's scores were compared to male and female applicants for assembly jobs. He achieved the following scores:
Right Hand — 20th percentile (dominant hand)
Left Hand — 15th percentile
Both Hands — 15th percentile
Assembly Tasks — less than 5th percentile (lowest possible score)
Mr. Stamm had difficulty tilting his head forward to see * * * in front of him. He rubbed his neck and shoulders after each trial. His fine dexterity rapidly decreased over the four minutes required for this testing session. He remarked that he does not attempt tasks that require gripping or fine dexterity because his hands have been weak since the neck surgery. It is difficulty [sic] for him to use his hands repetitively. His arms and hands began to shake a little and he became obviously less coordinated after 2 minutes of testing. Testing results indicate that the claimant would not be able to perform any work activities using his fingers or hands rapidly or repetitively. Work such as sorting, assembly, or packing, cashiering are not feasible.
 {¶ 16} 8. Following a May 9, 2005 hearing, a staff hearing officer ("SHO") issued an order denying relator's PTD application. The SHO order states:
The injured worker was examined at the request of the Industrial Commission by Dr. Koppenhoefer with respect to the allowed conditions in the claims. Dr. Koppenhoefer opined that the injured worker has reached maximum medical improvement considering the allowed physical conditions and has a resulting 33% whole person permanent impairment. Dr. Koppenhoefer opined that the injured worker would be capable of performing sedentary work activities provided that he be able to move his neck freely and avoid repetitive motions of the cervical spine. Dr. Koppenhoefer further opined that the injured worker should avoid activities which require him to look overhead and avoid chronic positioning of the cervical spine. Dr. Koppenhoefer completed a physical strength rating form which he attached to his medical report wherein he indicated that the injured worker is capable of performing physical work activity at a sedentary level. Sedentary work is defined on that form as meaning the ability to exert up to 10 pounds of force occasionally and a negligible amount of force frequently. Sedentary work further involves sitting most of the time, but may involve walking or standing for a brief periods [sic] of time. Jobs are considered sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.
The Staff Hearing Officer finds that the injured worker is capable of performing sedentary employment based on the opinion of Dr. Koppenhoefer and in accordance with the definition of such work contained on the Physical Strength Rating Form. The Staff Hearing Officer further finds that the injured worker should additionally avoid repetitive motions of the cervical spine, avoid activities which require him to look overhead and avoid chronic positioning of the cervical spine.
The injured worker submitted the Vocational Report of Ms. Carr for consideration. Ms. Carr performed testing on the injured worker and reported that he reads at a 7th grade equivalent, spells at a 5th grade equivalent, and performs arithmetic at a 6th grade equivalent. Ms. Carr opined that the injured worker would not be qualified to perform occupations requiring any reading, written communication, record keeping or math usage. Ms. Carr further administered the Purdue Peg Board Test which measures an individuals fine dexterity and gross motor skills. Ms. Carr reported that the injured worker scored in the 20th
percentile with the right hand and 15th percentile with the left hand, and the 15th percentile with both hands together. Based on those testing results, Ms. Carr opined that the injured worker would not be qualified to perform work activities using his fingers or hands rapidly or repetitively.
The injured worker also submitted the vocational report of Mr. Cody for consideration. Mr. Cody did not perform testing on the injured worker and did not appear to have reviewed the vocational report of Ms. Carr in his assessment. Mr. Cody opined that the limitations suggested by Dr. Koppenhoefer in his medical evaluation would qualify the injured worker to perform such unskilled sedentary occupations as sedentary assembler, sedentary inspector, sedentary cashier, security system monitor, information clerk, and other unskilled clerical occupations.
The Staff Hearing Officer finds that the injured worker was 61 years of age at the time he filed this application for Permanent and Total Disability Compensation, has a formal 9th grade education and work experience as a pipe fitter and plumber. The Staff Hearing Officer finds that the injured worker's age is not a factor which would impact on physical capabilities. The Staff Hearing Officer further finds that the injured worker's age would be a barrier for the injured worker in participating in formal programs aimed at academic remediation. The Staff Hearing Officer further finds that the injured worker's formal education does not accurately reflect his academic functioning. Based on the testing results reported by Ms. Carr, the Staff Hearing Officer finds that the injured worker reads at a 7th grade equivalent, spells at a 5th grade equivalent, and performs mathematics at a 6th grade equivalent. The Staff Hearing Officer finds that such academic abilities would be a barrier in performing occupations requiring reading, written communication, record keeping or math usage. The Staff Hearing Officer finds that based on the injured worker's academic functioning, he would best learn new skills through on-the-job training. The Staff Hearing Officer further finds that the injured worker demonstrated the ability to learn skills through training by participating in a 3 year apprenticeship program to become a journeyman plumber and pipe fitter. The Staff Hearing Officer finds that the injured worker would be capable of learning new skills through training or unskilled sedentary occupations. Considering the injured worker's age, academic functioning, and work experience in conjunction with his ability to perform sedentary employment, the Staff Hearing Officer finds that the injured worker is able to engage in sustained remunerative employment.
Accordingly, the application for Permanent and Total Disability Compensation is denied.
This order is based on the medical report of Dr. Ron Koppenhoefer dated 02/17/2005.
 {¶ 17} 9. On July 15, 2005, relator, Howard E. Stamm, filed this mandamus action.
Conclusions of Law:
 {¶ 18} It is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 19} For its threshold medical determination, the commission, through its SHO, found that the industrial injuries preclude all but sedentary employment, based upon Dr. Koppenhoefer's report. In this action, relator does not challenge the commission's determination that he is medically able to perform sedentary work, nor does relator challenge Dr. Koppenhoefer's report. However, relator does challenge the commission's nonmedical analysis.
 {¶ 20} Analysis begins with an observation as to how the vocational reports were used by the commission. The commission's order devotes a full paragraph to a discussion of the Carr report. In the next paragraph, the commission discusses the Cody report. However, the commission did not rely upon the Cody report and it only partially relied upon the Carr report. In the paragraph following discussion of the Cody report, the SHO presents her own analysis of the nonmedical issue.
 {¶ 21} The SHO begins her own analysis with relator's age which is 61 years. The SHO finds that age would be a barrier to academic remediation. Relying in part on the Carr report, the SHO finds that relator's formal ninth grade education does not accurately reflect his academic functioning. The SHO notes that Carr reported that relator reads at the seventh grade level, spells at the fifth grade level and performs math at the sixth grade level. The SHO goes on to find that these academic abilities would be a barrier in performing occupations requiring reading, written communication, record keeping or math usage.
 {¶ 22} Notwithstanding the above-described negative factors, the SHO then finds that relator "would best learn new skills through on-the-job training." The SHO finds that relator demonstrated the ability to learn skills through training by participating in a three year apprenticeship program to become a journeyman plumber and pipe fitter. The SHO finds that relator would be "capable of learning new skills through training for unskilled sedentary occupations."
 {¶ 23} Relator argues that neither vocational report supports the notion that relator can be retrained, thus suggesting an abuse of discretion because neither Carr nor Cody opined that relator can be trained for sedentary employment. Relator's argument is premised upon a misunderstanding of the commission's role in the nonmedical analysis.
 {¶ 24} The commission may credit offered vocational evidence but expert opinion is not critical or even necessary because the commission is the expert on the nonmedical issue. State ex rel.Jackson v. Indus. Comm. (1997), 79 Ohio St.3d 266, 271. Moreover, the commission may reject the conclusion of a vocational report and yet draw its own conclusion from the same nonmedical information. State ex rel. Ewart v. Indus. Comm.
(1996), 76 Ohio St.3d 139, 141.
 {¶ 25} Here, the commission was not bound by Carr's ultimate opinion on PTD simply because it accepted Carr's testing results. The commission found that, despite relator's academic deficits, he has demonstrated an ability to learn new skills through training during his three year apprenticeship program. The commission found that this demonstrated ability would offset the academic deficits and lead to sustained remunerative employment.
 {¶ 26} As the court in Ewart notes, nonmedical factors are often subject to different interpretations. Id. at 141. This principle is equally applicable here.
 {¶ 27} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.